UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------X
JOSEPH ROMAIN *et al*,

                    *Plaintiffs*,

        -against-

WEBSTER BANK N.A.,

                    *Defendant*.
-------------------------------------------X

**MEMORANDUM
AND ORDER**
23-cv-5956 (NRM) (JMW)

**A P P E A R A N C E S:**

**Joseph Romain
Marie R. Romain**
176 Rushmore Street
Westbury, NY 11590
*PRO SE Plaintiffs*

Ian T. Clarke-Fisher, Esq.
Sabrina Marie Galli, Esq.
**Robinson & Cole LLP**
Chrysler East Building
666 Third Avenue, 20th Floor
New York, NY 10017
*Attorneys for Defendant*

**WICKS**, Magistrate Judge:

      In this home mortgage loan case involving a failure to comply with the Real Estate Settlement Procedures Act ("RESPA"), Defendant seeks to dismiss the case in its entirety and concomitantly, a stay of discovery pending resolution of the motion.[1]  For the reasons that follow, the stay is **granted**.

---

[1] The motion to dismiss is fully briefed and pending before the Hon. Nina R. Morrison.

1

Plaintiffs Joseph and Marie Romain ("Plaintiffs") commenced this suit on August 7, 2023 alleging that Defendant Webster Bank N.A. failed to return a surplus owed to them 30 days after an escrow analysis was performed which violated 12 C.F.R. § 1024.17(f)(2)(i).[2] (ECF No. 1 at 7.) Plaintiffs purchased a house in 1988 and had a mortgage with Long Island Savings Bank, FSB. (*Id.*) The loan was for $100,000 and Plaintiffs continuously paid this mortgage. (*Id.*) Soon thereafter, the Long Island Savings Bank merged with several other banks and ultimately with Defendant in June 2022 and is the current lender and holder of Plaintiffs' mortgage and escrow account. (*Id.*) At the time of the merger with Defendant, the principal balance was $36,343.21. (*Id.*)

On December 15, 2022, Defendant sent Plaintiffs an analysis of their escrow account demonstrating a shortage on Plaintiffs' account—that is, that more money would be withdrawn from the escrow account than the amount Plaintiffs paid into the account. (*Id.*) However, Plaintiffs discovered and allege there was a surplus —not a shortage—on their account and Defendant is now mandated to return the surplus owed to Plaintiffs in the amount of $181.71. (*Id.*) Plaintiffs called Defendant at the customer service number provided and "requested [that Defendant] eliminate [the] shortage."[3] (*Id.*) Defendant then reduced the shortage amount to

---

[2] The applicable regulation states as follows:

> If an escrow account analysis discloses a surplus, the servicer shall, within 30 days from the date of the analysis, refund the surplus to the borrower if the surplus is greater than or equal to 50 dollars ($50). If the surplus is less than 50 dollars ($50), the servicer may refund such amount to the borrower, or credit such amount against the next year's escrow payments.

12 C.F.R. § 1024.17(f)(2)(i).

[3] A "shortage" refers to "an amount by which a current escrow account balance falls short of the target balance at the time of escrow analysis" while a "surplus" is "an amount by which the current escrow account balance exceeds the target balance for the account." *See* 12 C.F.R. § 1024.17(b).

2

$375.25 on January 30, 2023.  (*Id.* at 8.)  Plaintiffs complained twice more about this shortage amount but to no avail.  (*Id.*)

Plaintiffs allege Defendant has added excessive shortages over time, making it difficult for them, a low-income family, to pay the monthly payments.  (*Id.* at 9.)  As a result, their credit history has been damaged.  (*Id.*)

In addition to the non-payment of the monies in their account, Plaintiffs also allege that Defendant violated 18 U.S.C. § 1001 (discussing penalties for false statements made to any branch of government) and 18 U.S.C. § 287 (conspiracy to defraud the United States) by making false statements—namely by knowingly "present[ing] a false fictitious escrow account analysis in writing that there is a shortage in the mortgage" for 2022.  (ECF No. 1 at 10.)  They further contend that Defendant breached a fiduciary duty and committed fraud.  (*Id.* at 11.)

On October 10, 2023, Defendant moved to dismiss the Complaint in its entirety on the grounds that (1) Plaintiffs fail to state a claim under RESPA, breach of fiduciary duty, and fraud given the lack of support for damages, the existence of a fiduciary duty and its breach, and particularity under Rule 9(b), and (2) their claims under 18 U.S.C. § 287 must also be dismissed for failure to allege crimes affecting the government as required by the statute.  (ECF No. 12.)  That motion is pending before the Hon. Nina R. Morrison.  In the interim, Defendant moved to stay discovery in this matter pending the Court's ruling on its motion to dismiss (ECF No. 20).

## DISCUSSION

### A. Motion to Stay Standard

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Thomas v. N.Y. City Dep't of Educ.*, No. 09-CV-5167, 2010 WL

3709923, at *2 (E.D.N.Y. Sept. 14, 2010) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). The mere filing of a dispositive motion in and of itself does not halt discovery obligations in federal court.[4] That is, a stay of discovery is not warranted, without more, by the mere pendency of a dispositive motion. *Weitzner v. Sciton, Inc.*, No.CV 2005-2533, 2006 WL 3827422, at *1 (E.D.N.Y. Dec. 27, 2006). Rather, the moving party must make a showing of "good cause" to warrant a stay of discovery. *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 115 (E.D.N.Y. 2006); Fed. R. Civ. P. 16(b)(4) (discovery schedule "may be modified only for good cause and with the judge's consent"); *Ass'n Fe y Allegria v. Republic of Ecuador*, Nos. 98 Civ. 8650 (BSJ), No. 98 Civ. 8693 (BSJ), 1999 WL 147716, at *1 (S.D.N.Y. Mar. 16, 1999) ("Together, these provisions enable the district court to stay discovery where resolution of a preliminary motion may dispose of the entire action."). In evaluating whether a stay of discovery pending resolution of a dispositive motion, courts typically consider: "(1) the breadth of discovery sought, (2) any prejudice that would result, and (3) the strength of the motion." *Robbins v. Candy Digital Inc.*, No. 23-CV-10619 (LJL), 2024 WL 2221362, at *1 (S.D.N.Y. May 15, 2024) (internal citations omitted).

"Upon a showing of good cause[,] a district court has considerable discretion to stay discovery pursuant to Rule 26(c)." *Al Thani v. Hanke,* No. 20-CV-4765 (JPC), 2021 WL 23312, at *1 (S.D.N.Y. Jan. 4, 2021) (alteration in original) (quoting *Republic of Turkey v. Christies, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018)). In assessing good cause, courts look to "the particular circumstances and posture of each case." *Ellington Credit Fund, Ltd. v. Select*

---

[4] Contrast this with New York state court practice which expressly provides for a stay of discovery pending the filing of a dispositive motion. *See* N.Y. CPLR 3214(b) (automatic stay of "disclosure" upon service of dispositive motion).

*Portfolio Servs., Inc.*, No. 08 Civ. 2437 (RJS), 2008 WL 11510668, at *2 (S.D.N.Y. June 12, 2008) (quoting *Hachette Distrib., Inc. v. Hudson Cnty. News Co.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991)). *Au fond,* the specific facts, circumstances and context of the case guide the Court.

### B. Strength of Defendant's Motion to Dismiss

Plaintiffs here allege that they were not paid their surplus amount owed to them from their escrow account. (ECF No. 1.) As part of its motion to dismiss, Defendant denies that Plaintiffs had a refundable surplus and states that Plaintiffs nevertheless have not established damages. (ECF No. 12.) Here, the strength of Defendant's motion to dismiss weighs in favor of staying discovery for the reasons set forth below.[5]

*First,* RESPA is a consumer protection statute to provide consumers which "provides a framework for borrowers to remedy errors relating to the servicing of their mortgage loans." *Naimoli v. Ocwen Loan Servicing, LLC,* 22 F.4th 376, 379 (2d Cir. 2022). Plaintiffs here allege violations of C.F.R. § 1024.17(f)(2)(i) which requires a mortgagee to refund any surpluses over fifty dollars in an escrow account. *See* 12 C.F.R. § 1024.17(f)(2)(i).

However, courts have stated that violations of § 1024.17(f)(2)(i) do not account for private rights of action. *See Montesanti v. Nationstar Mortg. LLC,* No. 3:22-CV-0688-X, 2023 U.S. Dist. LEXIS 94327, at *3 (N.D. Tex. May 31, 2023) (stating that plaintiff "conceded that there is no private right of action for violations of the escrow payment regulation…so he withdr[e]w this claim"); *Cybulski v. Nationstar Mortg. LLC,* No. 17-cv-03711, 2018 U.S. Dist. LEXIS 147638, at *12 (N.D. Ill. Aug. 30, 2018) (stating there is no private right of action for

---

[5] The Court's consideration and analysis of the arguments set forth in Defendant's motion to dismiss is purely for purposes of weighing whether a stay should be granted. This analysis should not in any way be construed as the Court prejudging the merits or predicting the outcome of the motion to dismiss.

5

this regulation). This means that Plaintiffs cannot avail themselves of relief under this regulation.

*Second,* even if Plaintiffs did have a right of action under this regulation, they still have not established there was indeed a surplus in the escrow account and their subsequent entitlement to damages. Notably, Plaintiffs themselves submitted letters from Defendant's customer service department explaining why there was a shortage in the escrow account:

> 1/12/2023
> The Escrow Dept. removed the escrow cushion from the account and re-analyzed the escrow. The escrow shortage amount was $375.25. New loan payment $1,215.88 effective 2/1/2023. This escrow analysis overwrote and cancelled out the 12/16/2022 escrow analysis.
>
> The escrow shortage amount ($375.25) was accurate. The school taxes on the property increased from $5,441.66 to $5,936.14. This increase created a shortage in the escrow account.

(ECF No. 1 at 31) (stating that the shortage was due to an increase in school taxes on the property). In addition, Defendant even includes a comprehensive breakdown of the alleged shortage in its motion to dismiss memorandum of law:

| Payments Made in and out of the Account | $ Amount |
|---|---|
| Projected Escrow Balance by September 2023 | $3,175.56 |
| Plus October Escrow Payment | $791.26 |
| Minus Applicable Taxes | -$2,968.07 |
| Minus Hazard Insurance | -$1,374 |
| Total | A shortage of $375.25 |

(ECF No. 12-1 at 11.) Plaintiffs only summarily state that they are entitled to a surplus amount of $181.71, but do not provide credible supporting information.[6] (ECF No. 1 at 11) (stating that

---

[6] Plaintiffs provide their own calculation of the $181.71 amount owed to them and point to Exhibit B in the opposition to Defendant's motion to dismiss. (ECF No. 13 at 4.) However, Plaintiffs' calculations fail to take into account the entire amount to be paid in 2022 as indicated in Exhibit B.

6

they paid $9,429.52 to Defendant and Defendant paid $9,247.71, indicating an alleged surplus of $181.71 in their escrow account without attaching any supporting documentation).

Moreover, Plaintiffs have not sufficiently alleged their entitlement to actual damages as a result of Defendant's failure to comply with RESPA or statutory damages upon demonstrating a pattern or practice of noncompliance with the statute. *Jackson v. Caliber Home Loans,* No. 18-cv-4282 (NG)(CLP), 2019 U.S. Dist. LEXIS 126916, at *20 (E.D.N.Y. July 29, 2016).  Here Plaintiffs request actual and punitive damages in the amount of $125 million.  (ECF No. 1 at 11.) Plaintiffs claim that Defendant has been inserting "excessive cushions" to the account making it hard for them to meet monthly payments.  (*Id.* at 9.)  They allege this has led to requests for loan modifications which damaged their credit history as well as their inability to refinance their house.  (*Id.*)  They further allege that they have been unable to pay their debt and Joseph Romain's sickness has resulted in his losing his job in 2010.  (*Id.* at 10.); (*see also* ECF No. 13 at 10) (stating that "Plaintiffs have struggled to pay mortgage loan due to excessive cushions Webster Bank charged to the escrow account" and their stressful situation has caused them to develop diabetes and undergo surgeries to their eyes and kidneys).  Plaintiffs, however, have not proven that Defendant's alleged misconduct alone *caused* them to miss payments, become ill, or lose a job which can lead to dismissal of their claims. *See In re Griffin,* No. 10-22431, 2010 Bankr. LEXIS 3555, 2010 WL 3928610, *4 (Bankr. S.D.N.Y. Aug. 31, 2010) ("[T]he courts have consistently dismissed complaints under RESPA if they do not allege actual damages or state merely that in a conclusory fashion the defendant caused damages to the plaintiff.").

Plaintiffs' allegations supporting their fraud claim fare no better.  To survive a motion to dismiss under Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud claims, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent[;]

7

(2) identify the speaker[;] (3) state where and when the statements were made[;] and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (citation omitted). Under New York law, the elements of a common-law fraud claim are (1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff. *MetLife Invs. USA Ins. Co. v. Zeidman*, 734 F. Supp. 2d 304, 312 (E.D.N.Y. 2010) (citing *Crigger v. Fahnestock & Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006)).

In the Complaint, Plaintiffs merely state:

> This is a breach of fiduciary and fraud case, The bank created a false statement that wrote that there is a shortage rather than creating a cushion during the year 2022, we paid an escrow account of $9429.52 to Webster Bank N.A. and the bank paid $ 9247.71, as escrow, a surplus of $ 181.71 is existing in the account.

(ECF No. 1 at 11); (*see also* ECF No. 13 at 9) (stating that Defendant puts together "a bunch of malicious facts" to create shortages). Without more, Plaintiffs' conclusory statements concerning Defendant's alleged fraud are insufficient to overcome their burden.[7]

Given the deficiencies and lack of private right of action under the RESPA regulation, *pro se* Plaintiffs opportunity to replead would be moot.[8] *See Mugabo v. Buggalo Police,* No. 20-cv-00409(RJA)(JJM), 2024 U.S. Dist. LEXIS 21826, at *6 (W.D.N.Y. Feb. 6, 2024) ("[W]here the problem with the pleading is substantive and better pleading will not cure it, repleading would be futile and leave to replead should be denied.") (citing *Cuoco v. Moritsugu,*

---

[7] It appears as though Plaintiffs concede that their breach of fiduciary duty claim is moot: "As described defendant, New York Courts have generally held that a fiduciary duty does *not* exist between mortgage brokers and borrowers." (ECF No. 13 at 12) (emphasis added).

[8] Plaintiffs here are *pro se*, which means that their filings are to be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "However, mere conclusions of law or unwarranted deductions need not be accepted." *Rosen v. N. Shore Towers Apartments, Inc.*, No. 11-CV-00752 (RRM) (LB), 2011 WL 2550733, at *3 (E.D.N.Y. June 27, 2011) (internal quotes omitted.)

222 F.3d 99, 112 (2d Cir. 2000)) (cleaned up); *Lopez v. Bayview Loan Servicing, LLC,* No. 16-CV-2610 (JPO), 2017 U.S. Dist. LEXIS 125392, at *23 (S.D.N.Y. Aug. 8, 2017) (denying leave to amend upon plaintiff's failure to state a valid claim under RESPA).

For the reasons stated above, Defendant has made a strong showing that their claims have merit, weighing in favor of a stay.

### C. Breadth of Discovery and Prejudice to the Opposing Party

The Court acknowledges that Defendant's description of the breadth of discovery and prejudice to Plaintiffs for this case is weak and is confined to just a few sentences: "A stay of discovery will allow the Parties to avoid the time-consuming task, expense, and burden of conducting discovery while the dispositive motion is pending. If a stay is not granted and Webster Bank's Motion is successful, Webster Bank will have needlessly spent additional time and resources on this action." (ECF No. 20-1 at 5.) In fact, palpably absent from Defendant's motion is any notion as to how costly or burdensome the discovery would be in the event the case is not stayed. *Robbins*, No. 23-CV-10619 (LJL), 2024 WL 2221362, at *2 (noting that the conclusory assertions are "not revealing of the extent of discovery that will be necessary in this case"). Nevertheless, the Court finds that a stay is warranted for a multitude of reasons.

Although the nature of the case and the facts alleged do not otherwise indicate the discovery sought would be "exceptional," Plaintiffs submit documentation dating back to 2015—nearly ten years ago—which indicates that Defendant will likely have to produce similar documentation if the Court finds that Plaintiffs assert valid claims and no statutes of limitation apply to those claims. *See O'Sullivan v. Deutsche Bank AG*, No. 17-cv-8709 (LTS) (GWG), 2018 U.S. Dist. LEXIS 70418, at *26-27 (S.D.N.Y. Apr. 26, 2018) (stating that the breadth of

9

discovery would impose a significant burden on defendants and third parties and "go back decades in time").

Relatedly, the motion to dismiss has been bundle filed since October 2023 and the undersigned cancelled the July 1, 2024 Initial Conference in light of the anticipated motion to stay. (Electronic Order dated June 15, 2024.) This weighs in favor of granting a stay given that the case is still in its nascent stages and discovery has not yet been conducted or completed. *See Contracto Ltd. v. Fast Search & Transfer Intern.*, AS, No. CV 12-1930(JS)(ARL), 2012 WL 1225287, at *2 (E.D.N.Y. July 12, 2012) ("the procedural posture of [the] action supports a stay given the case is newly filed, no party has served any initial disclosures or discovery demands and therefore a stay would not dispute the progress of ongoing discovery . . .").

Plaintiffs have made efforts to request "indispensable" bank statements from Defendant and propose a "reasonable discovery schedule addressing relevant topics" to take place in a short period of time. Still, discovery should be stayed given that all discovery would be for naught if the Complaint is dismissed in its entirety by Judge Morrison as requested. (ECF No. 20-2 at 3.); *see also See Vida Press v. Dotcom Liquidators, Ltd.,* No. 22-CV-2044 (HG) (JMW), 2022 WL 17128638, at *2 (E.D.N.Y. Nov. 22, 2022) ("[T]he second factor favors a stay as the breadth of discovery and corresponding burden of responding would prejudice Defendant if its motion to dismiss is indeed granted."); *see Rivera v. Heyman*, No. 96 Civ. 4489 (PKL), 1997 WL 86394, *1 (S.D.N.Y. Feb. 27, 1997) (finding that disposition of dismissal motion may significantly narrow or eliminate issues in case, and that proceeding with discovery would waste resources and cause an undue burden on defendants).

Finally, Plaintiffs themselves have not demonstrated any *undue* prejudice if a stay were to be granted. Instead, they merely state that "[a] stay in discovery at this time would unfairly

10

delay Plaintiffs' efforts to establish the merit of their case." (ECF No. 20-2 at 3.) Even if this were true, the motion to dismiss is fully filed so the stay would likely be short-lived and attempts to "establish the merit[s]" of this case would be moot if it is granted.

Although the Court is sympathetic to Plaintiffs' circumstances, weighing all the relevant factors, the Court finds that a stay of discovery pending the outcome of Defendant's motion to dismiss is warranted given the potential breadth of discovery and that Plaintiffs will not be unduly prejudiced given that the motion to dismiss has been fully filed and the stay would be for a relatively short period of time. *See In re Term Commodities Cotton Futures Litig.,* No. 12 Civ. 5126 (ALC)(KNF), 2013 U.S. Dist. LEXIS 65797, at *23 (S.D.N.Y. May 8, 2013).

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Stay (ECF No. 20) is **GRANTED**. Defendant's counsel is directed to serve a copy of this Order upon Plaintiffs on or before July 5, 2024

Dated:   Central Islip, New York
        July 2, 2024

                                        **S O   O R D E R E D:**

                                      /s/ *James M. Wicks*
                                        JAMES M. WICKS
                                United States Magistrate Judge