UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Joseph Romain and Marie R. Romain,

            Plaintiffs,

    v.

Webster Bank N.A.,

            Defendant.

23-cv-5956 (NRM) (JMW)

**MEMORANDUM AND ORDER**

NINA R. MORRISON, United States District Judge.

*Pro se* Plaintiffs Joseph and Marie Romain bring this suit for damages under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2609, 12 C.F.R. § 1024.17, a RESPA implementing regulation, and 3 N.Y. Comp. Codes R. & Regs. tit. 3, § 419.2, a related New York state regulation, against Defendant Webster Bank N.A. ("Webster"). Plaintiffs also allege Defendants violated 18. U.S.C. § 287 and 18 U.S.C. § 1001, two criminal statutes. Defendant moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons discussed below, the Court grants Defendant's motion in its entirety.

**FACTUAL BACKGROUND**

Plaintiffs Joseph and Marie Romain purchased a house on April 25, 1988, with a mortgage from Long Island Saving Bank FSB for $100,000. *See* Compl. 7, ECF No.

1

1.[1] The bank then merged with several other banks, including Defendant Webster Bank, N.A. on June 1, 2022. *Id.* Defendant is the current lender and holder of Plaintiffs' mortgage and escrow account, and at the time of the merger, Plaintiffs' principal balance was $36,343.21. *Id.* On December 15, 2022, Webster sent Plaintiffs a statement analysis of their escrow account indicating a projected shortage of $1,959.21 (projected low point in October 2023 of $376.70 plus a required reserve balance of $1,582.51). *Id.* at 7, 14. On January 13, 2023, Plaintiffs contacted Defendant asserting that the shortage amount was an error, and Defendant reduced the projected shortage to $375.25, excluding the "required [] reserve balance." *Id.* at 7. Plaintiffs contacted Webster two more times to protest the calculated shortage, and Webster declined to adjust its calculation or take other action. *Id.* at 31.

Plaintiffs filed the Complaint *pro se* against Webster on August 7, 2023, pursuant to 12 C.F.R. § 1024.17, an implementing regulation of a section of RESPA — 12 U.S.C. § 2609 — and N.Y. Comp. Codes R. & Regs. tit. 3, § 419.2, a state regulation that calls for shortages, surpluses, or deficiencies in borrowers' escrow accounts to be addressed in accordance with RESPA. Compl. at 6. Plaintiffs attached thirty-eight pages of exhibits to the Complaint, including annual escrow account disclosure statements, communications with Defendant, and mortgage interest

---

[1] All page references use ECF pagination.

statements, some of which date back to 2015.[2] *Id.* at 13–50.[3] In the Complaint, Plaintiffs allege that Defendant incorrectly determined that Plaintiffs had a shortage in their escrow account when in fact Plaintiffs had a surplus, and that Defendant failed to return the surplus of $181.71 to Plaintiffs as required under RESPA. *Id.* at 8. Plaintiffs also allege that Defendant breached its fiduciary duty, committed fraud, and violated 18 U.S.C. § 1001 and 18 U.S.C. § 287 by making false statements to the government. *Id.* at 10–11. Plaintiffs seek $125,000,000 in actual and punitive damages. *Id.* at 11.

On October 10, 2023, Defendant moved to dismiss the Complaint in its entirety on the grounds that (1) Plaintiffs fail to state a claim under RESPA, (2) Plaintiffs do not and cannot allege the existence of a fiduciary duty or breach of that duty, (3) Plaintiffs fail to state a claim for fraud, and (4) claims under 18 U.S.C. § 287 and 18 U.S.C. § 1001 must be dismissed because violating either statute requires conduct affecting the government, which is entirely absent here. Def.'s Mot. to Dismiss ("Mot."), ECF No. 12; Def.'s Reply in Supp. of Mot. to Dismiss ("Def.'s Reply"), ECF No. 15.

---

[2] It is unclear whether Plaintiffs are seeking damages only for the alleged 2022 violation of RESPA discussed at some length in the Complaint that involves Webster, or for all the alleged violations of RESPA mentioned in the Complaint, including those dating back to 2015, long before Webster was Plaintiffs' lender. Compl. at 8–9.

[3] Fed. R. Civ. P. 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Relying on Rule 10(c), courts have held that "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts "must construe [a complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021). However, courts must also "disregard conclusory allegations, such as 'formulaic recitation[s] of the elements of a cause of action.'" *Id.* at 107 (alteration in original) (quoting *Twombly*, 550 U.S. at 555).

At the motion to dismiss stage, "a *pro se* plaintiff's complaint 'must be construed liberally with "special solicitude" and interpreted to raise the strongest claims that it suggests.'" *Guillaume v. Ocwen Loan Servicing, LLC*, No. 17-cv-7187 (WFK) (LB), 2019 WL 8645386, at *1 (E.D.N.Y. Dec. 17, 2019) (quoting *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013)). If "a liberal reading of the complaint gives any indication that a valid claim might be stated," the Court must grant leave to amend. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Nonetheless, a *pro se* plaintiff's "'bald assertions and conclusions of law' are not adequate" to withstand a motion to dismiss. *Wilson v. Fam. Dollar Stores*, No. 06-cv-639 (DGT), 2007 WL 952066, at *9

4

(E.D.N.Y. Mar. 29, 2007) (quoting *Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir. 2000)).

## DISCUSSION

### I.   Plaintiffs Fail to State a Claim Under RESPA

Plaintiffs allege that Defendant violated C.F.R. § 1024.17(f), a RESPA implementing regulation, which requires a mortgagee to refund any surpluses over fifty dollars in an escrow account within thirty days of discovering the surplus. 12 C.F.R. § 1024.17(f)(2)(i). Plaintiffs, however, fail to state a claim under RESPA, and therefore their RESPA claims must be dismissed.

As a preliminary matter, the Court notes that several Courts of Appeals have held that there is no private right of action under RESPA for a violation of 12 U.S.C. § 2609, which sets the statutory requirements for escrow practices and is operationalized by 12 C.F.R. § 1024.17. *See, e.g.*, *Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357 (11th Cir. 2006) (holding that 12 U.S.C. § 2609 provides no private right of action); *Louisiana v. Litton Mortg. Co.*, 50 F.3d 1298 (5th Cir. 1995) (same); *Allison v. Liberty Sav.*, 695 F.2d 1086 (7th Cir. 1982) (same). The Sixth Circuit is the only circuit to have found that 12 U.S.C. § 2609 provides a private right of action. *Vega v. First Fed. Sav. & Loan Ass'n*, 622 F.2d 918, 925 n.8 (6th Cir. 1980) (finding that RESPA creates a private right of action for violations of § 2609 notwithstanding the absence of an express provision). District courts in the Sixth Circuit, however, have acknowledged that other Courts of Appeals disagree, or have decided that other RESPA provisions do not provide a private right of action. *Ellis v. Chase Home*

*Finance, LLC*, No. 14-11186, 2014 WL 7184457, at *10–11 (E.D. Mich. Dec. 16, 2014) (acknowledging conflicting case law among the circuits and declining to reach whether § 2609 provides a private right of action, instead deciding on a "narrower, dispositive ground"); *Clark v. Hamilton Mortg. Co.*, No. 07-cv-252, 2008 WL 4899471, at *3 (W.D. Mich. Nov. 12, 2008) (acknowledging that the *Vega* court "provided little to no explanation regarding its decision that a private cause of action was available for Section 10" of RESPA and not reaching arguments regarding whether private right of action applies to Section 4 of RESPA); *Craven v. Litton Loan Servicing, LP*, No. 04-cv-428, 2005 WL 2333585, at *4 (W.D. Mich. Sept. 23, 2005) (acknowledging the Sixth Circuit's finding that Congress intended to create private remedy for violations of 12 U.S.C. §§ 2609 and 2610 but finding "that no private right of action exists under section 12 of RESPA, 12 U.S.C. § 2610").

The Second Circuit has yet to address the question of whether 12 U.S.C. § 2609 provides a private right of action. *See Johnson v. Wash. Mut. Bank, F.A.*, 216 F. App'x 64, 66 (2d Cir. 2007) (summary order) (stating that the Second Circuit has not so decided and resolving the case on other grounds). However, district courts in this Circuit have concluded that no private right of action exists for a violation of 12 U.S.C. § 2609. *See Papapietro v. Litton Loan Servicing, LP*, No. 13-cv-2433 (WFK) (ST), 2020 WL 13179529, at *8 (E.D.N.Y. Mar. 31, 2020), *aff'd*, No. 20-1179, 2022 WL 1421404 (2d Cir. May 5, 2022) (summary order); *Herman v. Mr. Cooper Grp. Inc.*, No. 22-cv-8952 (VB), 2023 WL 6960283 (S.D.N.Y. Oct. 20, 2023). *But see Heller v. First Town Mortg. Corp.*, 97-cv-8575 (JSM), 1998 WL 614197, at *2–4 (S.D.N.Y. Sept. 14, 1998)

6

(holding that section 10(a) of 12 U.S.C. § 2609(a) provides a private right of action). In any event, the Court need not address whether a private right of action exists for violating 12 U.S.C. § 2609, including through violations of implementing regulation 12 C.F.R. § 1024.17, because Plaintiffs have not sufficiently alleged a violation of the statute.

Plaintiffs summarily state that they accrued a surplus of $181.71 in 2022 and that the surplus was unlawfully withheld by Defendant. Compl. at 8 (citing 12 C.F.R. § 1024.17(f)(2)(i) ("If an escrow account analysis discloses a surplus, the servicer shall, within 30 days from the date of the analysis, refund the surplus to the borrower if the surplus is greater than or equal to 50 dollars.")). But Plaintiffs misapply RESPA in the calculations that underpin their allegations. In the Complaint, Plaintiffs state that "during the year 2022, [Plaintiffs] paid an escrow account of $9429.52 to Webster Bank N.A. and the bank paid $9247.71, as escrow, [so] a surplus of $181.71 [ ] exist[ed] in the account." Compl. at 11.[4] Plaintiffs calculated the alleged surplus by subtracting the amount they allege Webster paid out of the escrow account from the amount Plaintiffs claim they paid into the escrow account during the 2022 calendar year. *See id.*

The problem with Plaintiffs' argument is that their methodology for calculating the alleged $181.71 "surplus" in this context is flawed. *See id.* Surpluses and

---

[4] The difference between $9429.52 and $9247.71 is actually 10 cents higher, at $181.81. In their opposition to Defendant's motion to dismiss, Plaintiffs allege that the escrow paid out $9,247.81 and arrive at the $181.71 figure. Pls.' Opp. to Def.'s Mot. to Dismiss ("Pls.' Opp.") at 13, ECF No. 13.

7

shortages are not calculated by looking back at the end of a calendar year and subtracting what was paid out from the escrow account from what borrowers paid into the account.  Instead, surpluses and shortages are to be calculated through an "escrow account analysis" that typically occurs at "completion of [one] escrow account computation year" to determine the monthly payments for the "*next* escrow account computation year."  12 C.F.R. § 1024.17(b) (emphasis supplied); *see also id.* § 1024.17(f)(1)–(3).[5]  The "escrow account computation year" is the "12-month period that a servicer establishes for the escrow account beginning with the borrower's initial payment date"; thus, the escrow account computation year is not necessarily the same as a given calendar year.  12 C.F.R. § 1024.17(b).  Indeed, documents submitted by the parties show that the escrow account computation year that spanned most of calendar year 2022 did not begin in January with the start of the calendar year.  *See* Compl. at 14, 18; Mot. Ex. 2 at 2, ECF No. 12-3.

In addition to relying on an incorrect time denominator, Plaintiffs' allegations rely on an improper retrospective calculation, instead of the forward-looking calculation RESPA requires for surpluses and shortages.  Under RESPA, a "surplus" is the "amount by which the current escrow account balance exceeds the target balance for the account," and the "target balance" is "the estimated month end balance in an escrow account that is just sufficient to cover the remaining disbursements from the escrow account in the escrow account computation year,

---

[5] The regulation provides that "[t]he servicer may [also] conduct an escrow account analysis at other times during the escrow computation year."  12 C.F.R. § 1024.17(f)(1)(ii).

8

taking into account the remaining scheduled periodic payments, and a cushion, if any." 12 C.F.R. § 1024.17(b).

Thus, to allege a surplus during calendar year 2022, Plaintiffs would need to show that at the time an escrow account analysis was completed either prior to or sometime during the escrow account computation year that began in 2022, the current balance in the account at that time exceeded the forward-looking target balance at that time, considering projected disbursements and scheduled payments. That is a different calculation from Plaintiffs' retrospective subtraction of what the escrow account paid out by the end of calendar year 2022 from what Plaintiffs paid into the escrow account in total during that year.

As a result, even if a private right of action exists for an alleged violation of 12 C.F.R. § 1024.17(b) under 12 U.S.C. § 2609, Plaintiff has not alleged such a violation. Plaintiffs do not allege that a surplus — as defined by RESPA's implementing regulation — of greater than fifty dollars was revealed at the end of one escrow computation year for the escrow account analysis for the following escrow computation year, or at the conclusion of an escrow account analysis completed during the escrow computation year, and then withheld by Defendant in violation of the statute and its implementing regulations. Therefore, Plaintiffs fail to state a claim upon which relief can be granted concerning the alleged surplus from 2022.

The Complaint contains similar allegations concerning what Plaintiffs characterize as surpluses in Plaintiffs' escrow account that were not returned to Plaintiffs in the years 2021, 2019, 2017, 2016, 2015, "and so on for life of [the]

9

mortgage." Compl. at 8–9. As Defendant notes, any claims relating to alleged surpluses accrued prior to 2020 are barred by the statute of limitations, assuming the limitations period for claims under 12 U.S.C. § 2609 (and its implementing regulation, 12 C.F.R. § 1024.17) aligns with the explicitly stated limitations for other sections. *See* 12 U.S.C. § 2614 (noting the three-year statute of limitations for alleged § 2605 violations). With respect to the alleged surplus in 2021, Plaintiffs allege that a surplus of $23.08 existed at the end of the calendar year. Compl. at 8. Not only does Plaintiffs' 2021 calculation suffer from the same defects as their 2022 calculation — reliance on the incorrect time denominator and use of retrospective subtraction instead of the appropriate prospective calculation — it also alleges a surplus under fifty dollars. Compl. at 8. That amount, even if accurate, is insufficient to state a claim for relief since the regulation only requires a servicer to refund a surplus of fifty dollars or more. 12 C.F.R. § 1024.17(f)(2)(i).

Plaintiffs also make allegations concerning a miscalculated shortage they were informed about in 2023. Compl. at 8. Plaintiffs apparently use the same retrospective subtraction — subtracting the amount paid from the escrow account from what they paid into the account by the end of a calendar year — that they used to calculate their alleged surpluses. As with surpluses, however, shortages are calculated prospectively: an escrow account analysis for the upcoming or in-progress escrow account computation year calculates whether the current account balance falls below the target balance given projected disbursements and payments for the upcoming escrow computation year. 12 C.F.R. § 1014(b). As detailed in the Annual

10

Escrow Account Projection Statements that Plaintiffs included as exhibits, Defendants conducted an escrow account analysis in December 2022 and then re-conducted that analysis in January 2023 after Plaintiffs contacted Defendant about the calculation. Compl. at 14, 18. The escrow account analysis projected that — given the disbursements anticipated for the *2023* escrow computation year, including from taxes and hazard insurance — there would be a projected shortage of $375.25 in the month of October 2023. *Id.* The escrow account analysis divided $375.25 by 12 (equaling $31.27) and folded it into the new monthly payment for the 2023 escrow account computation year, in compliance with RESPA. *See id.* at 18; 12 C.F.R. § 1024.17(f)(3) ("The servicer may require the borrower to repay the shortage amount in equal monthly payments over at least a 12-month period.").

Thus, the Plaintiffs fail to allege a claim under RESPA for the shortage the servicer projected for the 2023 escrow account computation year. The escrow account analysis showed a projected shortage, and the servicer's division of that shortage into the upcoming monthly payment was proper under 12 C.F.R. § 1024.17(f)(3). If Plaintiffs challenge the shortage as improperly calculated, their allegation relies on a calculation that does not follow the definition of "shortage" in RESPA. Thus, Plaintiffs' challenge does not state a claim for a RESPA violation.

Finally, Plaintiffs allege that "[d]uring the life of the mortgage to the causes of action, [Defendant] added excessive cushions to the escrow." Compl. at 9. But they do not provide any explanation or calculations to support that claim. *See id.* Under RESPA, a servicer "may require a borrower to pay into an escrow account to cover

11

unanticipated disbursements or disbursements made before the borrower's payments are available in the account." 12 C.F.R. § 1024.17(b). That "cushion" must "be no greater than one-sixth (1/6) of the estimated total annual payments from the escrow account." 12 C.F.R. § 1024.17(c)(1)(i),(ii). Plaintiffs do not show how any alleged cushion required or requested by Defendant violated that regulatory cap.

In sum, even if Plaintiffs could bring a private action concerning Webster's alleged failure to refund a surplus in Plaintiffs' escrow account under RESPA, the Complaint does not sufficiently allege any such violation here, and Plaintiffs' RESPA claims must be dismissed.

## II.     Plaintiffs Fail to Establish Breach of Fiduciary Duty and Fraud

The Complaint contains only barebone allegations that Defendant defrauded Plaintiffs and breached a fiduciary duty owed to Plaintiffs. Even giving Plaintiffs the benefit of all favorable inferences that must be afforded to *pro se* litigants, their Complaint falls far short of what is required under the heightened pleading standards that apply to fraud claims and the pleading standards required by the Federal Rules of Civil Procedure.

In alleging that Defendant breached its fiduciary duty and committed fraud, Plaintiffs state: "The bank created a false statement that wrote that there is a shortage rather than creating a cushion during the year 2022, we paid an escrow account of $9429.52 to Webster Bank N.A. and the bank paid $9247.71, as escrow, a surplus of $181.71 is existing in the account." Compl. at 11; *see also* Pls.' Opp. at 7 (stating that Defendant "made its escrow analysis with false pretenses, false

12

misrepresentations, or actual fraud to pretend plaintiffs have insufficient fund[s] to pay in the escrow account"). To survive a motion to dismiss under Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud claims, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (citation omitted).  "[U]nder New York law, the elements of a [common-law] fraud claim are: '(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff.'" *MetLife Invs. USA Ins. Co. v. Zeidman*, 734 F. Supp. 2d 304, 312 (E.D.N.Y. 2010) (ADS) (ETB) (citing *Crigger v. Fahnestock & Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006)).  In a separate part of their Complaint alleging violations of 18 U.S.C. §§ 287 and 1001, discussed *infra*, Plaintiffs do state that Defendant "presented a false, fictitious escrow account analysis" indicating a shortage during 2022; "knew such claim was false, fictious, or fraudulent"; and "did so with the specific intent to violate the law or with a consciousness that what [Defendant] was doing was wrong." Compl. at 10.  Plaintiffs, however, fail to allege any facts showing that there was "a material misrepresentation or omission of fact," *Metlife*, 734 F. Supp. 2d at 312, as Plaintiffs misapplied RESPA when calculating their determination that there were surpluses that should have been reimbursed to them.  Moreover, Plaintiffs provide no evidence for any allegation that Defendant had "knowledge of [any] falsity" or an "intent to

13

defraud." *Id.* Nor do Plaintiffs demonstrate any reasonable reliance on an alleged false statement; to the contrary, Plaintiffs allege that they immediately disputed the accuracy of the alleged misstatement regarding the shortage Defendant first alerted Plaintiffs to in 2022 (and then revised in 2023). Compl. at 7. Indeed, Plaintiffs told Defendant over a phone call that the "amount of shortage added to [their] escrow account . . . [was] wrong" and "requested to eliminate [the] shortage," after which "the bank reduced [the] shortage to $375.25." *Id.*

Plaintiffs similarly fail to state a claim for breach of fiduciary duty. "To state a cause of action to recover damages for breach of fiduciary duty, a plaintiff must allege: '(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct.'" *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020) (quoting *United States Fire Ins. Co. v. Raia*, 942 N.Y.S.2d 543, 545 (N.Y. App. Div. 2012)). Plaintiffs cannot rely on their lender-borrower relationship to establish fiduciary duty, as "New York courts have held that a fiduciary duty generally does not exist between mortgage brokers and borrowers." *Iannuzzi v. Am. Mortg. Network, Inc.*, 727 F. Supp. 2d 125, 138 (E.D.N.Y. 2010) (JFB) (WDW) ("As a general matter, a lender is not a fiduciary of its borrower under New York law."). Additionally, it appears as though Plaintiffs concede that their breach of fiduciary duty claim is moot: their opposition to the Motion notes that "[a]s described [by] [D]efendant, New York Courts have generally held that a fiduciary duty does not exist between mortgage brokers and borrowers." Pls.' Opp. at 12. And they cite no exception to the general rule that would apply in this case. Thus,

14

because the Complaint fails to adequately state claims for fraud and breach of fiduciary duty, those claims are dismissed.

### III. 18 U.S.C. § 287 and 18 U.S.C. § 1001 Are Criminal Statutes Referring to Crimes and Statements Against the Government and Are Improper Here

Plaintiffs allege that Defendant violated 18 U.S.C. § 287 and 18 U.S.C. § 1001. Compl. at 6, 10. Both are criminal statutes that set forth prohibited acts that can only be prosecuted by the government, and neither provides a private right of action. It is long recognized by federal courts that "in our federal system crimes are always prosecuted by the Federal Government," not by private complaints. *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86 (2d Cir. 1972); *see also Leeke v. Timmerman*, 454 U.S. 83, 85–86 (1981) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973))). The exception is if a party can show that Congress specifically intended to create a private right of action. *See generally Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) (observing that enforcement of statutory violation under § 1983 requires showing that "Congress intended to create a federal right").

Here, the criminal statutes on which Plaintiffs rely create no express private right of action, nor any implied right of action. *See Muhammad v. Dep't of Navy*, No. 14-cv-926 (SLT), No. 14-cv-1290 (SLT), 2014 WL 1330902, at *6 (E.D.N.Y. Apr. 1, 2014) (dismissing plaintiff's complaints for failure to state a claim where one complaint cited criminal statutes including 18 U.S.C. § 287, as "[e]ven assuming that

15

these statutes apply to this case, they do not provide for private causes of action"); *Burton v. City of N.Y. Police Dep't*, No. 14-cv-7158 (WFK) (RER), 2014 WL 7427534, at *2 (holding that "to the extent that Plaintiff seeks to bring a claim under 18 U.S.C. § 1001, that claim is dismissed" because "[c]riminal prosecutions are within the province of the prosecutors who have unreviewable discretion over the decision not to prosecute").

In any event, Plaintiffs fail to allege the essential element of either statute. 18 U.S.C. § 287 criminalizes making or presenting "to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent." To support this claim, Plaintiffs state that Defendant "presented a false, fictitious escrow account analysis in writing that there is a shortage in the mortgage during the year 2022," "knew such claim was false, fictious, or fraudulent," and "did so with the specific intent to violate the law or with a consciousness that what he was doing was wrong." Compl. at 10. Plaintiffs allege no facts to support that Defendant made a false statement to the United States government. Thus, Plaintiffs have failed to allege a claim under 18 U.S.C. § 287.

18 U.S.C. § 1001 concerns "matter[s] within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." Within such matters, the statute criminalizes anyone who knowingly and willfully "(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any

16

materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry." 18. U.S.C. § 1001(a).  Plaintiffs allege no facts to support a finding that Defendant made false statements in any matter within the jurisdiction of any branch of government.  Thus, they have failed to state a claim for relief under 18 U.S.C. § 1001.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is granted.  In light of its duty to liberally construe *pro se* complaints, the Court has considered whether to grant Plaintiffs leave to amend their complaint but finds that amendment would be futile. *See Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 124–25 (2d Cir. 2011). Although Plaintiffs paid the filing fee to bring the action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

*/s/ Nina R. Morrison*
NINA R. MORRISON
United States District Judge

Dated:        January 8, 2025
              Brooklyn, New York